UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
SCOTTSDALE INSURANCE COMPANY,

                Plaintiff,

          - against -                        **MEMORANDUM & ORDER**

FREEDOM G.C. INC., J.L., BY HIS MOTHER
AND NATURAL GUARDIAN, MAYLYNDA        19-cv-2597 (RJD)(CLP)
LOPEZ, AND MAYLYNDA LOPEZ,
INDIVIDUALLY,

                Defendants.
-------------------------------------------------------- x

DEARIE, District Judge.

      This is an insurance coverage dispute stemming from an automobile accident that occurred on May 9, 2016, and critically injured defendant J.L., a minor child of defendant Maylynda Lopez. The driver of the vehicle was employed by defendant Freedom G.C., Inc. ("Freedom"), a construction contracting company based in New York that held a general commercial liability insurance policy issued by plaintiff Scottsdale Insurance Company ("Scottsdale") at the time of the accident.

      Scottsdale moves for summary judgment under Federal Rule of Civil Procedure 56, arguing it is entitled to a judgment in its favor declaring that it owes no duty to defend or indemnify Freedom for any claims arising from the accident under the terms of the insurance policy. Freedom has not appeared in this action, but defendants J.L. and Lopez oppose the motion. For the reasons discussed herein, plaintiff's motion is granted.

## BACKGROUND

      On May 9, 2016, Dionis Ahmetaj was operating a motor vehicle when the vehicle struck J.L. on East 110 Street and Third Avenue, New York, New York. On August 11, 2017,

defendants J.L. and Lopez commenced an action against Dionis Ahmetaj, Aranit Ahmetaj (Dionis's brother and the owner of the vehicle), and Freedom (Dionis's employer), in the Supreme Court of the State of New York (Index No. 157224/2017) seeking damages for J.L.'s injuries.  That action remains pending in state court.

On May 2, 2019, Scottsdale initiated the instant action seeking a declaration that it owes no duty to defend or indemnify Freedom for any of the claims in the underlying state court action as a result of Freedom's commercial general liability insurance policy with Scottsdale (the "Policy").  The parties agree that the Policy, filed at ECF No. 29-7, was effective at the time of the accident in May 2016 and afforded Freedom the following coverage:

> **SECTION I – COVERAGES**
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> > a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim of "suit" that may result. But:
> >
> > > **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> > >
> > > **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
> >
> > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
> >
> > b.  This insurance applies to "bodily injury" and "property damage" only if:

2

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period

The parties also agree that the Policy includes various exclusions from coverage, including an "auto" exclusion:

> **2. Exclusions**
>
> **This insurance does not apply to:**
>
> * * *
>
> **g. Aircraft, Auto Or Watercraft**
>
> **"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".**

The parties further agree that the "auto" exclusion applies to car accidents involving an "insured," defined by the terms of the Policy as:

> **a. [Freedom's] "volunteer workers" only while performing duties related to the conduct of your business, or [Freedom's] "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.**

Thus, the parties agree that bodily injury arising from the use of a vehicle by a Freedom employee, while performing duties related to Freedom's business, is excluded from the Policy's coverage. The parties disagree, however, as to a critical legal question—was Dionis Ahmetaj an "employee" of Freedom at the time of the accident? Scottsdale argues that if he was an employee, the accident is excluded from the Policy per the aforementioned automobile exclusion, and if he was not an employee, then there is no basis for liability against Freedom.

3

Defendants J.L. and Lopez oppose the motion, arguing that the accident is covered by the Policy because, regardless of Dionis's status as a Freedom employee or independent contractor, Dionis was acting as Freedom's "agent" at the time of the accident so Freedom and Scottsdale cannot disclaim liability and coverage for J.L.'s injuries.

At his August 12, 2020 deposition in this case (ECF No. 32-2), Dionis Ahmetaj testified as to the following regarding his relationship with Freedom in May 2016:

- He was employed by Freedom beginning in 2015 (8:25-9:14)

- He was originally a full-time employee for a short period (approximately 1 month) in 2015 and thereafter on an "as-needed basis" (16:5-19)

- While full-time in 2015 he received a W-2 and thereafter received a 1099 (30:4-23)

- He was an independent contractor for Freedom (11:8-12:10)

- He was working under the direction of a man named John who worked for Freedom (16:20-17:7; 28:22-29:2)

- His duties including making sure workers at the site knew what they had to do, assigning their jobs and ordering materials to make sure that their daily jobs were completed (35:24-36:9). He also described his duties to include overseeing job sites, overseeing laborers and ordering materials needed for the job. (74:2-20)

- In the course of those duties, to a certain extent he used his own judgment (75:20-23)

- He was in "constant communication" with John about what needed to be done (79:18-81:17)

- The number of days he worked varied day-to-day, week-by-week (36:14-18)

- If he went to work on a given day, he was there "the whole day, the eight-hour span" (37:4-12)

- He usually received a weekly check for the amount of work he completed that week (38:12-24)

- If he had a doctor's appointment or personal matter, he would tell John he would not be able to come in and would not earn compensation for that time or day (40:9-41:7)

- Otherwise, John would set his work schedule (64:21-65:22)

- He did not keep any records of how many hours he worked in a given day or week (41:14-17)

- Nobody worked for him individually and he never hired any subcontractors (65:23-66:5)

- He had clothing with Freedom's name on it that was given to him and that he was required to wear at a job site (68:9-16)

- If he had to purchase tools or materials for work at a job site, he would be reimbursed for them (69:4-20)

- He did not receive benefits from Freedom (42:2-6)

- He does not have reason to believe that he was personally insured or covered as an insured policy under any Freedom insurance policy (43:5-21)

- He is not aware of having any liability insurance in 2016 (44:15-17)

- He did not work for anyone other than Freedom in 2016 (63:4-15)

- He owned an LLC, Bond Clothing LLC, at the same time he worked for Freedom in 2016, but received no income from it (52:9-13; 53:2-8; 63:4-15)

- He does not recall working for anyone other than Freedom in 2016 (53:2-8)

- On the day of the accident, he borrowed a car from his brother to take his mother to a doctor's appointment (94:15-18)

5

- When he realized the appointment was not on that day, he had a conversation with someone from work about going to pick up materials on behalf of Freedom (89:5-8; 91:2-9)

- He did not own a car and had never picked up materials in a car for Freedom prior to that day (92:3-93:18)

## DISCUSSION

I.  Declaratory Judgment

Plaintiff seeks declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. A district court should render a declaratory judgment when such a judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969).

While there is a pending action in state court, a declaratory judgment in this case is still appropriate because it concerns Scottsdale's insurance coverage obligations, if any, and thus is distinct from the merits of the underlying action.

II.  Summary Judgment

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is on the moving party to establish the absence of any material factual issues." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). To determine whether there is a genuine issue of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Id. (internal citation

omitted).[1]

### A. Employment status

Plaintiff has established prima facie entitlement to summary judgment on its declaratory judgment claim by pointing to the clear and unambiguous terms of the Policy's auto exclusion, excluding from coverage car accidents in which the vehicle is operated by an employee, and to Dionis's deposition testimony about his employment with Freedom at the time of accident. (ECF No. 29-8 at 8-12.) In opposition, J.L. and Lopez contend that, *inter alia*, Dionis's testimony shows he was an independent contractor, not an employee, of Freedom and so the auto exclusion does not apply. (ECF No. 30 at 7-8.)

Because this is an insurance coverage dispute in which I am called upon to interpret the language of the Policy as a matter of law, I am required to give "unambiguous terms" their "plain and ordinary meaning." Teichman v. Cmty. Hosp. of W. Suffolk, 663 N.E.2d 628, 630 (N.Y. 1996); see Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006).

The Policy excludes coverage for bodily injuries arising out of a vehicle operated by an "insured." "Insured" is defined in the Policy as either a "volunteer worker"— one who "donates" his work and is "not paid a fee, salary or other compensation"—**or an "employee"**— including a "leased worker" (a person leased by a labor leasing firm) but not a "temporary worker" (a person "furnished to you to substitute for a permanent 'employee'"). (ECF No. 29-7 at Policy §§ II, V.)

The critical question is thus whether or not Dionis was an "employee" of Freedom within

---

[1] In this diversity action, the Court applies New York law on consent of the parties. (ECF Nos. 29-8, 29-10, 30); see Bennett v. Sterling Planet, Inc., 546 F. App'x 30, 33 (2d Cir. 2013) ("In a diversity case, where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry.").

7

the meaning of the Policy and Scottsdale bears the burden of proof. Outlook Realty, LLC v. U.S. Underwriters Ins. Co., 886 N.Y.S.2d 630, 631 (N.Y. App. Div. 2009) ("Generally, it is [the burden] . . . for the insurer to prove that an exclusion in the policy applies to defeat coverage[.]"); see also Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 218 (N.Y. 2002). Under New York law, an employee is someone over whom an "employer has control and direction not only of the work as to its result, but as to the details and method of doing the work, and may discharge . . . for disobeying such control and direction." Beach v. Velzy, 143 N.E. 805, 806 (N.Y. 1924). This is to be contrasted with an "independent contractor" who "agrees to do a specific piece of work for another for a lump sum or its equivalent who has control of himself and his helpers, as to when, within a reasonable time, he shall begin and finish the work, as to the method, means or procedure of accomplishing it, and who is not subject to discharge because he does the work as to method and detail in one way rather than another." Id. "Whether a person is an 'employee' or an 'independent contractor' is an ultimate fact to be determined from the evidence itself. It may be called a conclusion to be drawn from the contract itself, the attitude of the parties toward each other, the nature of the work and all relevant circumstances." Felice v. St. Agnes Hosp., 411 N.Y.S.2d 901, 907 (N.Y. App. Div. 1978).

Defendants argue that this is a factual question that should be determined by the jury. (ECF No. 30 at 1.) I disagree. "Whether this is a factually based inquiry or a pure legal dispute depends largely on the circumstances of the individual case . . . The [Second Circuit] explained that in a previous case, it 'discussed factors to be considered in determining whether a person was an employee or an independent contractor in light of the totality of the circumstances, and . . . noted that the 'existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent

8

contractors—is a question of law.'" Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 597 (E.D.N.Y. 2012) (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).

Here, the essential facts are not in dispute; only the legal conclusion to be drawn from those facts. Scottsdale points to testimony Dionis gave during his deposition in this case to support its position that he was a Freedom employee. Specifically, Dionis testified that he "answer[ed] to" a Freedom supervisor (16:20-17:13; 28:22-29:2), he was in "constant communication" with his supervisor (79:18-81:17), he was paid weekly (38:12-24), if he had a doctor's appointment or personal issue, he would alert his supervisor he would not be able to come in that day (40:9-41:7), John set his work schedule (64:21-65:22), he did not keep a record of his time or provide invoices (41:14-17), he was required to wear a Freedom uniform at a job site (68:9-16), if he had to purchase tools or materials, he would be reimbursed for them (69:4-20), he did not work for anyone other than Freedom in 2016 (63:4-15), and that he did not carry his own insurance (44:15-17).

J.L. and Lopez rely on different testimony given at the same deposition to argue that there is a factual dispute about Dionis's role vis-à-vis Freedom. For instance, J.L. and Lopez point out that Dionis also testified that he used his own judgment in performing his duties (75:20-23), the number of days he worked varied and he worked on an "as-needed basis" (16:5-19), and he received a Form 1099 for tax purposes instead of a W-2 (30:4-23). Dionis also referred to himself as an independent contractor. (11:8-12:10).

Although Dionis repeatedly referred to himself as an independent contractor during his deposition and received a yearly 1099, the tax form typically provided to independent contractors, his testimony indicates he was in fact a Freedom employee as defined under New York law. His Freedom supervisor directed the "means and manner of accomplishment" of his

9

job duties. Mace v. Morrison & Fleming, 44 N.Y.S.2d 672, 674 (N.Y. App. Div. 1943), aff'd, 293 N.Y. 844 (N.Y. 1944). Freedom not only "prescribe[d] what shall be done" but also "how it shall be done"—the hallmark of an employer-employee relationship. Id. Further, on the site he was in Freedom uniform and used tools either provided by Freedom or reimbursed to him by Freedom. He did not track the hours he worked or submit invoices for his time. He was not paid a lump sum for his services. He was paid weekly and John presumably kept track of his time. Finally, unlike an independent contractor who sets their own schedule, Dionis testified that John set his schedule and he would call out of work if he had a personal issue and his compensation would be reduced accordingly.

Accordingly, I conclude that Dionis Ahmetaj was an employee within the meaning of the Policy and the accident that is the subject of the underlying state action is thus excluded from coverage per the unambiguous language of the auto exclusion.

**B. Agency**

Defendants also argue that "if [Dionis] was not [Freedom's] employee" he was nonetheless "acting on Freedom['s] behalf" at the time of the relevant accident. (ECF No. 30 at 8-11.) Under this agency theory, defendants argue that Freedom is vicariously liable for Dionis's conduct and that Scottsdale cannot disclaim coverage because the auto exclusion applies only to an "insured" and that definition does not include an agent. Id. at 10-11. Plaintiff counters that defendants merely attempt to avoid New York law that a party is generally not vicariously liable for the torts of an independent contractor by casting Dionis as an "agent," but that the distinction lacks legal support. (ECF No. 29-10 at 4-6.)

Defendants' argument is premised on the conclusion that Dionis was an independent contractor—and not an employee—at the time of the accident. (ECF No. 30 at 8-11.) As such,

10

the argument is mooted by the Court's conclusion herein that Dionis was in fact a Freedom employee as a matter of law and thus the accident falls within the scope of the Policy's auto exclusion.

## **CONCLUSION**

Despite grave misgivings and a fair measure of regret, I must grant plaintiff's motion for summary judgment and enter a declaratory judgment in its favor. What might first appear as a question of fact, as defendants urge, is anything but. The uncontested facts establish as a matter of law that Dionis Ahmetaj was a Freedom employee at the time of this very unfortunate accident.

Plaintiff's motion for summary judgment is GRANTED.

SO ORDERED.

Dated: September 30, 2021  
Brooklyn, NY

/s/ Raymond J. Dearie  
RAYMOND J. DEARIE  
United States District Judge